IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON

**LORA RENEE RICHARDSON,**

 **Plaintiff,**

v.             Civil Action No. 3:17-cv-1221

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleading (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 14). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II of the Social Security Act.

### Background

Claimant, Lora Renee Richardson, filed an application for DIB on March 25, 2014. Claimant alleged disability beginning January 1, 2014. The claim was denied initially on June 6, 2014 (Tr. at 80), and upon reconsideration on July 28, 2014. Claimant filed a request for hearing on June 6, 2014. A hearing was held on May 5, 2015, before an Administrative Law Judge (ALJ). The ALJ denied Claimant's application on August 15, 2015. Claimant requested the Appeals Council review the ALJ's decision. The Appeals Council denied Claimant's request for review on December 5, 2016 (Tr. at 1-4). Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520 and 416.920 (2017). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a) and 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d) and 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e) and 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f) (2017). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an

alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity during the period of time from her alleged onset date of November 25, 2008, through her date last insured (DLI) of December 31, 2018 (Tr. at 17). Under the second inquiry, the ALJ found that Claimant suffers from the medically determinable impairments of connective tissue disorder and obesity. (*Id.*) However, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ found that Claimant has the residual functional capacity (RFC) to perform light work, except occasional stooping, balancing, kneeling, crouching, crawling; never climb ladders, ropes or scaffolds; never work at unprotected heights or with machinery. In addition, Claimant could engage in simple routine repetitive tasks (Tr. at 21). The ALJ concluded that Claimant is unable to perform any past relevant work and may perform positions such as price marker, small parts assembler and non-clerical office assistant (Tr. at 25-26). Accordingly, the ALJ denied Claimant's application for DIB (Tr. at 27).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

### Claimant's Background

Claimant was born on August 15, 1970. Claimant graduated from high school and has a Regents Bachelor's degree with majors in political science and general psychology (Tr. at 36). Claimant has a driver's license.

### The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows.

Claimant complained of fatigue to her primary care physician, Patti Jo Marcum, M.D., on March 19, 2013 (Tr. at 370). At a follow up appointment with Dr. Marcum on April 7, 2013, Claimant was referred to a hematologist for anemia with iron deficiency (Tr. at 369). Claimant was examined by Dr. Mohamed Khasawneh, a hematologist on April 22, 2013 (Tr. at 273-276). Dr. Khasawneh's examination of Claimant was normal, and revealed that Claimant had normal range of motion in her extremities without tenderness or swelling; a normal gait; and coherent speech (Tr. at 275-276).

Claimant was assessed with iron deficiency anemia (Tr. at 276). Claimant advised Dr. Khasawneh on June 13, 2018, that she felt better for one week following the iron transfusion, but

4

was fatigued since then (Tr. at 268). This examination was identical to the previous one, and Dr. Khasawneh opined that Claimant was fully active and able to carry on all her pre-disease activities without restriction (Tr. at 270). On July 18, 2013, Claimant again complained to Dr. Khasawneh of worsening fatigue, but the examination was entirely normal and lab results indicated that her iron deficiency anemia had improved (Tr. at 265).

Claimant again returned to Dr. Khasawneh on October 17, 2013, with complaints of fatigue, but denied joint pain, swelling, redness, and decreased range of motion (Tr. at 259-260). A musculoskeletal examination was normal and she had normal range of motion without weakness, tenderness, or swelling, and a normal back (Tr. at 260). Dr. Khasawneh recommended a follow up in six months and encouraged her to see her primary care physician for a chronic fatigue evaluation (Tr. at 261).

On November 20, 2013, Claimant returned to Dr. Marcum and indicated that Cymbalta helped her pain, but her body was "jerking" at night since increasing her dosage (Tr. at 363). On December 26, 2013, Claimant reported to Dr. Marcum snoring and worsening leg movement (Tr. at 362). Dr. Marcum recommended that she taper off Cymbalta and add Elavil (Tr. at 362).

On December 18, 2013, Claimant saw Suzanne Gharib, M.D., a rheumatologist, for an evaluation of diffusing arthralgias (Tr. at 286). Claimant reported that she had been in her usual state of health until six or 12 months earlier, when she developed increased fatigue and arthralgias primarily in her shoulders and knees, and secondarily in her hands (Tr. at 286). Claimant reported that she started taking Cymbalta two months earlier which reduced the intensity and frequency of her pain (Tr. at 286). On examination, she was in no distress with no clubbing or cyanosis in her extremities; 1+ pitting edema over her lower extremities; normal motor strength in her upper and lower extremities; and normal range of motion in her shoulders, elbows, wrists, hands, hips, knees,

5

ankles, and feet without effusion, tenderness, pain or swelling (Tr. at 287).

On January 2, 2014, Claimant called Dr. Marcum and reported that she could not move her arms or legs and requested a work excuse (Tr. at 300). On January 9, 2014, Claimant returned to Dr. Gharib and was diagnosed with undifferentiated connective tissue disease and edema (Tr. at 277). Dr. Gharib noted that aside from abnormal DNAs, there was little clinical evidence except for arthralgias. (*Id.*) Claimant was prescribed Plaquenil and advised to follow up with Dr. Marcum for edema and weight fluctuation. (*Id.*) Dr. Gharib also noted that Claimant's worsening arthralgais may have been caused by the discontinuation of Cymbalta. (*Id.*)

Claimant returned to Dr. Gharib on February 20, 2014, who noted that it was unclear whether Claimant had benefitted from Plaquenil, but she should continue it and reassess in a few weeks (Tr. at 281). On February 28, 2014, Claimant advised Dr. Marcum that she was on a leave of absence from work and that Lexapro helped her anxiety and irritability, but she had overwhelming fatigue (Tr. at 298).

On April 2, 2014, Claimant advised Dr. Marcum that she was unable to work due to joint pain, but she was doing well on Celexa (Tr. at 297). On April 21, 2014, Claimant returned to Dr. Gharib and reported some improvement since starting Plaquenil (Tr. at 343). Dr. Gharib noted that a sleep study was negative and the cause of Claimant's fatigue was unclear, but was likely multifactorial. She also discussed good sleep habits with Claimant (Tr. at 343). An examination revealed that she was in no distress, had a normal heart and lungs, normal wrists and hands with no tenderness and a stable range of motion (Tr. at 344). On July 2, 2014, Claimant complained of fatigue, aches and pain that she rated as a five on a 10-point scale. An examination by Dr. Marcum revealed normal extremities and musculoskeletal systems, normal strength and a normal neurologic examination (Tr. at 443).

During an August 6, 2014 examination with Dr. Gharib, Claimant reported ongoing fatigue. Dr. Gharib suggested it was caused by chronic fatigue (Tr. at 424). Dr. Gharib also noted that Claimant's labs remained stable with high dsDNA, but were otherwise normal (Tr. at 424). On examination, Claimant was in no distress, had no rashes; her heart and lungs were normal; she had mild atrophy in her bilateral quadriceps, but full strength in the proximal and distal muscles; diminished DTR in the lower extremities; no tenderness or synovitis and stable range of motion in her wrists and hands (Tr. at 425). On August 13, 2014, Claimant returned to Dr. Marcum and again rated her pain at a five on a ten-point scale. She also complained of weakness in her legs and less muscle mass (Tr. at 441). The examination revealed reduced strength in the lower extremities, atrophy in her thighs and reduced strength in her upper extremities. (*Id.*) Dr. Marcum assessed diffuse arthralgias, and advised her to exercise and change her diet. (Tr. at 441).

On October 27, 2014, Claimant reported to Dr. Marcum that she had weakness in her quads and shoulders, especially when climbing stairs, periodic numbness of her shins, and aches in her hands (Tr. at 438). On examination, she had no edema; equal pulses bilaterally; equal strength and tone in her upper and lower extremities; and ambulated well (Tr. at 439). On December 29, 2014, Claimant had a rash secondary to connective tissue disorder, which cleared up after three days of steroids (Tr. at 434, 436). Claimant again reported to Dr. Marcum that she was not able to work secondary to fatigue and arthralgias (Tr. at 434).

On May 13, 2014, Claimant was examined by Stephen Nutter, M.D. (Tr. at 346). She reported intermittent pain in her hands, wrists, shoulders, hips, knees, and feet for a few years; that walking, standing, kneeling, squatting, and stairs increased her knee and hip pain; reaching, lifting, pushing, and pulling increased her shoulder pain; and fatigue. (*Id.*) Claimant also complained of monthly headaches and edema in her legs (Tr. at 346). Dr. Nutter noted that her blood work

7

appeared positive for lupus, but that she had been diagnosed with connective tissue disease and was taking Plaquenil. (*Id.*)

However, on examination, Claimant had a normal gait; used no assistive device; and was stable at station and comfortable in supine and sitting positions (Tr. at 347). Claimant had normal intellectual functioning and she had good recent and remote memory. (*Id.*) Cardiac examination was normal. (*Id.*) Claimant had tenderness in her shoulders, hips, and knees, but none in her elbows, wrists, ankles, feet or calves (Tr. at 348). Claimant's cervical and dorsolumbar spines were normal with no tenderness and a straight leg raise was normal (Tr. at 349). The neurological examination revealed full strength in the upper extremities; no evidence of atrophy; negative Hoffman and Babinski signs; no clonus; and intact cerebral function (Tr. at 349-50).

Claimant could walk on her heels and toes and perform a tandem gait and squat; squatting was difficult due to thigh pain (Tr. at 349). Dr. Nutter assessed probable lupus, with joint pain and tenderness in the shoulders, knees, and hips and some hand pain with reduced range of motion in the knees, but no evidence of rheumatoid arthritis and no ulnar deviation (Tr. at 349-50).

On May 19, 2014, Claimant had a psychological evaluation by Lisa C. Tate, M.A. (Tr. at 351). Claimant's chief complaints were anxiety disorder and medical problems, which included fatigue that caused difficulty with attention and concentration (Tr. at 352). She reported drinking between three and five cans of caffeinated soft drinks per day with frequent waking at night (Tr. at 352). Claimant reported that she gets her daughter off to school and her partner off to work, performs household chores and watches television (Tr. at 353). She reported that she reads five to six times per week; draws two to three times per week; goes to softball games several times a week and generally travels on weekends for softball. She also cooks three to six times per week; does laundry and performs other household chores; and shops at the grocery store, gas station, and

convenience store (Tr. at 354). Claimant also visits her mother and sister (Tr. at 354). Upon examination, Claimant had a normal gait and posture; good use of all her limbs; with no vision or hearing problems; and normal speech (Tr. at 351). A mental status examination was normal and indicated that Claimant was alert and oriented to person, place, time, and date; had a euthymic mood with a broad and reactive affect; logical and coherent thought processes; good insight; normal judgment; normal memory (recent and remote); and normal concentration (Tr. at 353). Ms. Tate assessed Claimant with normal social functioning, pace, persistence, and concentration (Tr. at 355).

John Todd, Ph.D., a state agency psychologist, reviewed the record on June 2, 2014. Dr. Todd opined that Claimant had no restriction in her activities of daily living, social functioning, or concentration, persistence, or pace, and had no episodes of decompensation (Tr. at 61). Dr. Todd also indicated that Claimant at most had a non-severe mental impairment. (*Id.*) On July 21, 2014, Karl G. Hursey, M.D., a state agency psychiatrist, affirmed Dr. Todd's conclusion (Tr. at 73-74).

Dominic Gaziano, M.D., a state agency physician, reviewed the record on June 5, 2014, and opined that Claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for four hours in an eight-hour day; sit for six hours in an eight-hour day; occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and had to avoid concentrated exposure to cold and hazards (Tr. at 64). On July 26, 2014, Uma Reddy, M.D., reviewed the record and opined that Claimant had the same physical capabilities as opined by Dr. Gaziano, with additional limitations to avoid concentrated exposure to heat, vibration, and fumes, odors, dusts and gases (Tr. at 76).

Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ "failed to properly evaluate her connective tissue disease as to whether it rose to a listing level" (ECF No. 13). Claimant asserts that "the ALJ errs in not

resolving the conflicts in the activities that the Claimant lists rather than choosing those that support a denial [sic] of benefits." (*Id.*) Additionally, Claimant asserts that the ALJ applied an improper standard of evaluating the weight of opinion evidence.

In response, Defendant asserts that substantial evidence supports the ALJ's step three finding that Claimant does not meet all of the requirements of Listing 14.06 regarding undifferentiated and mixed connective tissue disease (ECF No. 14). Defendant avers that substantial evidence supports the ALJ's analysis of Claimant's subjective complaints. (*Id.*) Defendant asserts that the ALJ reasonably assigned great weight to the opinion of Claimant's treating rheumatologist. (*Id.*)

## Discussion

To meet Listing 14.06(A), Claimant must demonstrate that she had mixed or undifferentiated connective tissue disease (as described in 14.00D5) that involved two or more organs/body systems with: (1) one of the organs/body systems involved to at least a moderate level of severity; and (2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss). *Id.* § 14.06A.

At the administrative hearing, Claimant's attorney stated "I've reviewed the possible listing, and it looks like it does not quite meet the listing. Therefore, we are going to be relying on the vocational medical factors" (Tr. at 35). Claimant asserts that her allegations of pain and fatigue are sufficient to meet Listing 14.06(A) (ECF No. 13). However, Claimant does not identify which two organs or body systems that she alleges are affected by her impairment, nor has she identified, let alone established, that one of her organs or body systems are involved to at least a moderate level of severity.

Even assuming that Claimant satisfied the first criteria under paragraph B with her assertions of fatigue and pain, Claimant has failed to demonstrate a marked level in

10

limitations of activities of daily living, maintaining social functioning or completing tasks in a timely manner due to deficiencies in concentration, persistence or pace as also required under paragraph B.

Furthermore, the ALJ stated "[N]o medical expert has indicated that the claimant's conditions medically equal a listing in this case, and so the undersigned finds that these disorders neither separately or in combination, meet nor medically equal any listing" (Tr. at 21). To the contrary, consultative state agency physician Uma Reddy, M.D., reviewed the records on July 26, 2014, and considered whether Claimant met Listing 14.06 (Tr. at 74). Dr. Reddy ultimately found that Claimant did not meet that or any other Listing. (*Id.*) Therefore, Claimant has not met her burden to demonstrate that she satisfies the criteria under Listing 14.06(A).

Claimant asserts that "[T]he ALJ is simply cherry picking acts that support his conclusions not weighing and resolving the conflicts in the evidence" (ECF No. 13). Claimant argues that the ALJ's findings regarding Claimant's limitations in activities of daily living are not supported by substantial evidence. Claimant points to instances in the evidence of record where she self-reported limitations in daily activities. (*Id.*)

When evaluating a claimant's subjective complaints, an ALJ must first thoroughly examine the objective medical evidence to determine whether the claimant's medically determinable impairments could reasonably produce her alleged symptoms. The ALJ must then determine whether the claimant experiences those symptoms with an intensity and persistence that impacts her ability to work. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 592-93 (4th Cir. 1996). It is well settled that a claimant's allegations alone will not establish that she is disabled. *See* 20 C.F.R. § 404.1529 (explaining how the Commissioner evaluates credibility); *Craig*, 76 F.3d at 594-95. While the ALJ must seriously consider a claimant's subjective complaints, it is within the

ALJ's discretion to weigh such complaints against the evidence and to reject them. *See* 20 C.F.R. § 404.1529; *Craig,* 76 F.3d at 595. Importantly, as the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). Under the deferential substantial evidence standard of review, it is particularly inappropriate to second-guess an ALJ's credibility determination. *See Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002).

Here, the ALJ correctly found that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. at 22). In rendering this credibility finding, the ALJ specifically considered Claimant's testimony and self-reports, articulated numerous and specific reasons why he found Claimant's statements to be only partially credible and identified with specificity the substantial evidence in the record that supported his credibility finding (Tr. at 18-19, 21-24). In particular, the ALJ found that Claimant's allegations were not entirely credible because they were not supported by objective and clinical findings (Tr. at 23). The ALJ found that Claimant's allegations were inconsistent with her conservative and minimal treatment.

Additionally, the ALJ found that Claimant's allegations were inconsistent with Dr. Nutter's physical examination findings, laboratory and diagnostic test results. The ALJ found that Claimant's application for and receipt of unemployment benefits after her alleged onset date was inconsistent as well. Furthermore, the ALJ found an August 2014 work activity questionnaire completed by Claimant's most recent place of employment and Claimant's own testimony were inconsistent with Claimant's allegations. Accordingly, the ALJ's findings are supported by substantial evidence in the record.

Weight Afforded Medical Opinions

Social Security Ruling 96-6p provides that findings of fact made by state agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the ALJ and Appeals Council levels of administrative review. ALJs and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id.*

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000).

While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id.*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*) Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[1] of §§ 404.1527 and 416.927.

Claimant asserts that great weight should not have been to the opinion of her treating hematologist, Dr. Khasawneh, because he "saw her anemia and iron infusion" and because the opinion was before Claimant alleges her condition worsened (ECF No. 13). The ALJ articulated four specific reasons for his evaluation of Dr. Khasawneh's June 2013 opinion (Tr. at 24). The ALJ explained that the opinion was entitled to great weight because it was: (1) rendered by a treating and examining medical source; (2) consistent with Claimant's testimony and reports that she performed numerous activities of daily living; (3) supported by diagnostic findings including hematology reports and iron infusion results; and (4) consistent with the medical evidence as a whole. (*Id.*) That said, the ALJ recognized that as a hematologist, Dr. Khasawneh's opinion was focused on Claimant's anemia. However, the ALJ explained that he gave great weight to the opinion because Dr. Khasawneh's treatment records and examination findings were based on the same complaints. Accordingly, substantial evidence supports the ALJ's evaluation of Dr.

---

[1] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors. 20 C.F.R. 416.927(c) and 404.1527.

Khasawneh's opinion.

Furthermore, the governing regulations expressly provide:

> [b]efore we make a determination that you are not disabled, we will develop your complete medical history *for at least the 12 months preceding the month in which you file your application* unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

20 C.F.R. § 404.1512(d) (emphasis added). Accordingly, the ALJ was required to evaluate Dr. Khasawneh's June 2013 medical opinion.

## Conclusion

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable impairment, "which can be expected to result in death, or which has lasted or can be expected to last, for a continuation period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a severe impairment that precludes her from performing not only her previous work, but also any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A) and § 1382c; 20 C.F.R. §§ 404.1505(a) and 416.912. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) and § 1382c; 20 C.F.R. §§ 404.1512(a) and 416.912.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 13), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 14), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   August 27, 2018

_____
Dwane L. Tinsley
United States Magistrate Judge